Your Honor, if I might, could I preserve three minutes in rebuttal? Stop while it's still on the clock, and I'll try to remind you if you forget. The clock is the key, not me. May it please the Court, my name is Bill Pearson, and I'm here today on behalf of the plaintiff and appellant affiliated FM Insurance Company. They insured the Seattle monorail that was involved in a fire, and the fire is alleged to have been caused by a driveshaft, which came undone, contacted the main body of the monorail, which created an electrical arc and led to a fire. The basis of this lawsuit is the claim that the appellee and the defendant below LTK Consulting was asked in 2002 to review the design of the monorail and made a recommendation for how the monorail was grounded, and because it is alleged that recommendation was accepted and implemented, the electrical arc that started the fire was allowed to continue to the point of starting a fire. The allegation is that if LTK had made a different recommendation in conformity with what we believe was proper electrical engineering, a different manner of grounding would have been used. The electrical arc would not... The insurance company alleges it's suffocated to the rights of the monorail licensee, right? That's correct. Under the concession agreement that was concluded between Seattle Monorail Services Affiliated Insurance and the City of Seattle in 1994, Seattle Monorail Services had the duty to insure the monorail. It's sort of a question of whether the services is an operator, not an owner. That's correct. Okay. And then you have to apply Western law to that status. Exactly. Okay. So the crux of it is, at least part of the crux anyway, whether Seattle Monorail Services could assert these claims against LTK. Correct. I think the gravamen of the motion below for summary judgment was whether or not Seattle Monorail Services had a sufficient property interest in the monorail to provide the basis to have a subrogated right to then pursue in toward a negligent company. In order for you to prevail, because I'm from California, but the... And I'm licensed in California as well. But do we have to find that SMS had some property interest in Seattle Monorail? Is that the only way you can prevail? I think more technically the question is whether or not Seattle Monorail Services had a sufficient possessory interest as recognized by the law of property in answer to your question, and that would turn on... Does it? Did SMS have to have a possessory interest in order for LTK to owe it a duty of care? I think it did have to have a possessory interest, and that would be to have the right in what was harmed, a sufficient right in what was harmed, to then sue LTK for damages. I think that's simply a restatement of the question posed. The possessory interest that we claim Seattle Monorail Services had was either a lease or a license, and it's our claim on appeal, and we think that the appeal turns on this Court's recognition that it doesn't matter whether you characterize that possessory interest as either a lease or a license. Either is a sufficient possessory interest. Does the Supreme Court of Washington make the distinction? It makes a distinction between what is a lease and what is a license, but it doesn't make any distinction as to whether or not, in this particular case, in order to sue someone else in tort, if you have a leasehold interest, that is sufficient, but if you only have a license interest, that's not. And that's the novel question, if you will, that led to the suggestion that maybe this is a question that should be posed to the Washington Supreme Court. Well, I have a question on this certification because, you know, apparently this economic loss rule exists here. Yes. That's clearly established. So it seems to me that what would be certified doesn't apply to this factual situation, which, I mean, it's not an issue of whether it exists or not. It's just, and I don't know why they would be interested in something that's sort of fact-specific determination. I mean, we haven't had a lot of good luck getting on certification issues, so it has to be something more legal than fact-based. But my response to that is, Your Honor, we think it should be plain that the economic loss doctrine doesn't apply to this situation because there's a lack of privity between the plaintiff and the defendant. There is a contract. The economic loss doctrine basically says you can't sue in torts when you have an adequate remedy in contract. Well, and everyone here knows that. All right? They know that. So why don't they, you know, it would seem to me, why don't they put that in their contracts? Well, the contract here is between the city of Seattle and Seattle Monorail Services, which would provide that. But CMS did not have a contract with LGK, right? Exactly. Right. Now, I know Justice Chambers waxed on separately in some opinion. So let me ask this. If you just could say that the Chambers opinion was going to be adopted as the law of Washington. Yes. Would it say you have a claim, that there's a duty to your claim? Well, I think the Chambers opinion, I think that's Alejandro versus Bolt, the Chambers opinion I think would make it very clear that the damages we have here are compensable in torts and the economic loss doctrine, therefore, would not apply. That would then lead to, I think, the underlying question that was the basis of the opinion, and that is, did Seattle Monorail Services have a sufficient possessory interest in the monorail itself to have a bundle of legal rights to sue for damages to the monorail? The argument that LTK made to the trial court originally was, is that the only interest Seattle Monorail Services had in the monorail was based on a contract, and that there was no other legally recognized interest in the monorail that it had as a result of operating the monorail. It was our contention that under Washington law, given what Seattle Monorail Services had been given under the concessionary agreement, that it had either a leasehold interest in the monorail or a license interest, both of which were sufficient. Didn't the contract provide for the purchase of insurance? Absolutely. Specifically naming the city of Seattle as the beneficiary? Absolutely. That was concluded in 1994 before there was, five years later, any contract with LTK, and that in and of itself recognized the fact that in order to impose upon Seattle Monorail Services the duty to insure the monorail, that Seattle Monorail Services would have to have an insurable interest in the monorail. Because otherwise, if it didn't, there would be no legal basis to support the insurance contract itself. Seattle Monorail Services has to have some sort of legal or equitable interest to qualify as an insurable interest to provide the foundation for the enforceability of the insurance contract to begin with. And that in and of itself, under Washington law we believe, gave Seattle Monorail Services the sufficient property interest in the monorail train that was damaged to support the current action. That seems a little broader. If you're saying just because someone has insurance, then that would seem that it would answer the question every time that you come up here. Well, if you, for instance, are going to insure a car or a house, if you take out that insurance, you have to have a sufficient legal relationship with that car or that house to support the contract. If you are simply a stranger, for instance, literally, if I were to take out an insurance policy on your house. Well, I understand that. But it's just that, I mean, they want to have coverage and they want, you know, it's a contractual relationship and they want to have liability. And what you're saying is an insurance company wouldn't write that if they didn't have a sufficient possessory interest. And therefore, every time someone has an insurance policy, that shows the possessory interest. Yes. So that should be the fact that they had to have insurance should be the end of this inquiry for us. I don't think that. I just don't think it's that easy. And I would concede it's not. I'd like it to be that easy, but it doesn't seem that easy. So would plaintiffs. But I think that there is a sufficient basis to demonstrate that the interest that Seattle Monorail Services had in the monorail was at least that of a licensee, which would be a sufficient possessory interest, as we pointed out under the restatement of property. But we think under Washington law, it had a leasehold interest under the concession agreement, which would be more than a sufficient possessory interest to. . . There doesn't seem to be much problem, I don't think, if they actually had a lease. But when I read the briefs, I had the impression that they had a contractual license to operate like a concession. Like a concession. But not a normal leasehold interest because they didn't have exclusive control of the property. Seattle could come in or change the schedule or do lots of things. First of all, under Washington law, let's go back for a moment. The trial court in its ruling stated as a basis that it did not feel that this was a lease interest because Seattle Monorail Services did not have, as it put it, exclusive possession of the premises. The problem, we believe, with that is that the trial court never defined just what it meant by the premises. And what we're specifically talking about here is the monorail itself. And I believe under the concession agreement, it should be fairly evident, we believe, that Seattle Monorail Services had the exclusive right to operate the monorail. That's its whole function, is to go back and forth. And that whether or not, for instance, the City of Seattle had the right to come onto the premises, which includes the station at Seattle Center or Montlake Center, is really peripheral to the question of whether or not Seattle Monorail Services had sufficient property interest in the monorail itself, which was the subject of the insurance. Well, the City of Seattle has an interest in the street and the stanchion and in the rail. Absolutely, because it owns it. It paid for its original construction. Now, I'm trying to recall exactly what was the issue in your papers that you wanted certified, but it seems to me there's, as Judge Callahan would perhaps suggest, you wouldn't have to certify, does the economic doctrine, laws doctrine exist, because it does exist in Washington law. It's kind of narrow to say does it apply to particular facts. But yet, you know, overall it seems to me there may be a valid, difficult question. I guess I'll ask the appellee to opine on this too, as to whether we could ask the court to answer the question whether LTK owed a duty to the monorail concessionaire. I think it's important, Your Honor, first of all to realize that when LTK brought its motion for summary judgment, what it claimed was is that Seattle Monorail Services didn't have a property interest in the monorail because the only legal basis that it could claim a property interest was under the contract, under the concession agreement. Now, in opposition to that motion, the plaintiff came forward and said, no, that's not correct. Our property interest in the monorail is a possessory interest that could be characterized either as a lease or a license. It was the court who, in rendering the decision, decided that the real question was or characterized the issue as plaintiff says they have a leasehold interest, defendant says they only have a license interest. Is a license interest sufficient to sustain an action in tort? I think the district court relied on either a dictum or a generally uncontested sentence in some old Supreme Court case suggesting that a person who doesn't have a property interest in property can't make a tort claim relating to it. You're right. I think that was the McKinnon v. Anderson case, and I think that was a question of who was going to regulate a wharf on Elliott Bay, the state or the city of Seattle. But it was not whether or not if you only had a license agreement, you couldn't sue a tort. We've run out of your time, so I guess we'd better hear from the appellee. And I didn't remind you on your rebuttal. Well, we'll have time to give you one minute for rebuttal. Mr. Pearson, could you address very explicitly in your argument why we shouldn't ask the state Supreme Court to address the question? Contrary to Judge Callahan's experience, I have to say my experience has been that every time I've asked them to look at an issue, they've done it. So I don't really have any question, much question in my mind, that there's a probability that if we certified a question, they would answer it. But you could explain to me why there isn't anything worth certifying. May it please the Court, my name is Jeffrey Winnick, and I represent the appellee, LTK Construction Services, Inc. Judge, in response to your question, I believe that the point raised by Judge Callahan is the appropriate response, which is that what is being asked for in this case is the application of general Washington doctrine, which I think is well established by Washington case law, to a specific set of facts. The question in this case is whether or not there is a property interest sufficient to overcome the economic loss doctrine. And that is a question that was able, that was something that the district court could discern from its interpretation of the concession agreement that the concessionaire entered into with the City of Seattle. It is not an issue for which the Washington State Supreme Court, their opinion would be appropriate in this case, nor is it necessary. Where would they come out if Justice Chambers' separate concurrence in that Alejandra case got adopted to be the law of the State? In other words, would that make a difference? I don't believe Justice Chambers' decision creates a distinction in this case. Justice Chambers' decision doesn't address the issue of whether or not a property interest is required. As you pointed out, Your Honor, it is the Robbins case where Justice Holmes from the U.S. Supreme Court stated that it's axiomatic that there must be a property interest in order to support a right of recovery in tort. A case that I was thinking about. And, in fact, there is no one that contests that there must be a property interest. The appellate themselves do not contest that there must be a property interest. They merely say that the concession agreement ought to be interpreted such that it is held to be a lease, which, according to them, as referring to Washington authority, would provide a property interest sufficient to overcome the economic loss doctrine. It is, in fact, the case that the district court did not hold that this was a lease. They did not hold that this was a license, as appellate tells you. To the contrary, they did not need to reach that issue. It wasn't, in fact, the issue that was before them. The issue that was before them was whether or not there was a property interest. And one of the distinctions that appellate draws that I want to address with the court is that it isn't the distinction between – it isn't whether or not there was a possessory interest. It is whether or not that possessory interest rises to the level of a property interest sufficient to overcome the application of the economic loss doctrine. And by reviewing the concession agreement, the district court came to the conclusion that it did not. And it came to that conclusion for a number of important considerations. Appellant points out to the court that there was an exclusive right on the part of SMS to operate the device, to operate the monorail systems. That's true. But that is the only exclusive right that was accorded to them. All of the other exclusive rights that would be consistent with the determination that there is a property interest were not conveyed to this operator pursuant to the concession agreement. And it is on that basis that the district court ruled. For example, he talks about the distinction between the premises versus the trains. But in this case, that distinction is not important because, in fact, pursuant to the concession agreement, the city retained the right to modify not only the associated premises, but the right to modify the cars themselves, the very monorail. They had a right to access those cars. They had a right to make repairs to those cars. They had a right to maintain those cars. They had a right to change the cars, all of which the district court held to be perfectly inconsistent with the notion that any party other than the city continued to, in fact, exercise ownership and a property interest over those cars. When the cars were ultimately damaged, it was incumbent upon the concessionaire to repair them, not because their property was damaged, but because, pursuant to their agreement, they took on an obligation to procure insurance and rectify the damage that they had caused to the property owner, namely the city. Well, let me ask you, you know, it seems that the economic loss doctrine is that part of the reason for it is that they want to encourage parties to, by contract, set out what their relationships are to avoid so that people going into relationships know what their liabilities will be and if they can properly prepare for them. Here, it would seem that the agreement with LTK happened after the relationship between the insurance company and, you know, was established. So how could they have contracted for this? Because it happened way after. Well, LTK is but one party. The one party that the city used to exercise the rights that it maintained under the concession agreement to review, make repairs to, or modify the trains. It could have been LTK. It could have been any other party. And at the time that the appellant entered into its contract with the city, it necessarily or it certainly should have recognized that the city was retaining those rights to itself, the right to contract with other parties for access to review and or make modifications to the cars. They could have taken, for example, an assignment of any rights in contract that the city would have against the parties that it hired to make repair or modifications to the train, and it did not do so. So from the standpoint of equity, there was certainly an opportunity on the part of the concessionaire, the appellant in this case, to have identified this potential ultimate outcome, namely that it would be. The concessionaire could have contracted with the city of Seattle in a way that would have covered this issue by getting an assignment of its claims, for example. But the concessionaire had no contract with LTK, correct? Correct. So now, isn't it somewhat of an extension of the economic loss doctrine to say that it applies to bar a claim of a party against another party with which it is not in any prior contract? I don't think so. I think there is a bright-line test with respect to the economic loss doctrine, which is to distinguish between what is recoverable in contract and what is recoverable in tort. I agree. I'm sorry. I mean, I understand the application of that doctrine in the case where a party in a contract tries to sue their contracting party with a tort claim, but I'm having a little bit of trouble understanding why it's so clear. It applies here to the claim of SMS against LTK. I'm not sure we... I'm not personally, I'm only one judge, but to say I'm not really persuaded that we shouldn't certify to the state supreme court the question whether the economic loss doctrine applies on a claim of the concessionaire against LTK and also the question of whether if it doesn't apply, whether LTK owed SMS any duty. It just seemed like fundamental tort issues to me. I wish Justice Holmes and Learned Hand were here with us. They could tell me, but luckily we've got Judge Pizer and Judge Callahan. Maybe they'll be able to tell me. Well, I think there are a couple of points. The first is I think it's fair to say that in this case, pursuant to Ninth Circuit Court of Appeals rulings, that it is not appropriate for the appellant to have asked for certification at the late date that it asked for it. It is asking for a second shot. It did not in the initial... Look, certification is a procedural device that we have available to us, and if we want to invoke it, we'll invoke it. You're just wasting your time trying to... I mean, we could do it without either of you requesting it. There is that case where a recent Ninth Circuit case suggesting that we look askance or someone asks to certify an issue belatedly, like they don't ask for the district court to certify. When they get a ruling they don't like, then they want us to certify. But I think, as Judge Pizer and Judge Callahan are saying, it's really a tool that we can enlist if we are not sure what state law is. We can ask for advice. Understood. And I do concede it is at the discretion of this Court as to whether or not it wants to certify the question. I merely point out the authority indicating that this would be a circumstance less appropriate for that. But let me address your particular question, which is whether or not this is a circumstance that is more appropriate for a remedy in tort. And I disagree with the Court respectfully, or I disagree with you, Judge Gould, in regard to that statement for this reason. There was an opportunity for this issue to be addressed in contract. It could have been a right assigned to the appellant at the time that it entered into the contract, recognizing that it had agreed to a set of circumstances where third parties could be brought in to make modifications to or encourage changes to the train or the premises, and it did not do so. And for LTK as well, there was a possibility, although not one that was exercised, to have foreclosed that particular risk by agreeing to an unassignment clause, for example, in its contract with the city. And that is the appropriate province for dealing with contract, potential contract claims of this sort. This is an economic loss. It is a disappointed commercial expectation, or in this case, a particular contractual remedy that the appellant undertook with respect to the city and one that it had to rectify with the city. And if it wanted to maintain for itself particular remedies to go after other third parties that would be involved, then it was incumbent upon it to have done so. So you're saying SMS had to get an assignment from the City of Seattle of any claims it would have, but would they be like tort claims? No, they would be contract claims. I'm sorry, they would be contract claims. The city had a potential contract claim against LTK if it believed that LTK services caused a damage to its property. It could have sought remedy from the concessionaire pursuant to the concession agreement, or it could have sued LTK on grounds that LTK caused damage to its property. If it clearly elected to take the most straightforward remedy, which was to secure relief under the concession agreement, but it could have just as easily foregone that remedy and sued LTK if it believed that LTK was culpable. Okay. And I haven't definitely decided what to think on this just for your information, but I am struggling with it. Let's say that there was a fire, and instead of having this 3 million of property damage, that like, you know, five people died. Now those estates of the people who died, they could sue LTK and tort, correct? Those people could sue LTK and tort because there is a personal injury. If there was a personal injury, there would be no application of the economic loss doctrine. Well, in that context, if they were able to establish that there was a duty imposed on LTK to have protected them from personal injury, then they would be able to sue. They could show a duty. Now, what is the best case that your client argues that says that the economic loss doctrine should be applied against a party like SMS that's not in a contract with, you know, with the engineering company? SMS's losses relate to costs that it knew at the time that it contracted with the city,  it knew under those circumstances that there was a potential for third parties to put it in the position of having to incur those losses. Then if you had to cite a Washington State Supreme Court case to support that idea, what's your best case or cases? Any of the cases cited with respect to the economic loss doctrine in Washington would be applicable. Birschauer, Stewart, Alejandro, any of those cases stand for the proposition that in the absence of a contract right, the party does not have a right of recovery against someone. Maybe I'm wrong, but I thought that at least some of those cases are cases where the doctrine is being applied against a party that's in a contract with the person they're trying to sue. Some of them were, some of them were not, which is an important distinction I want to raise. What's the best one you think for you where they weren't in that kind of contract, where they're more like SMS? The Birschauer case was one where there was not a contract. The Alejandro case versus Bull is a case where there was not a contract. And nonetheless, the court applied the economic loss doctrine to bar recovery. I think the one case cited by the appellant is the Batley case, which is citing dicta that is not consistent with the ultimate holding of the court, which is that the economic loss rule would apply. Your time's up, but we're going to give one minute extra to Mr. Pearson. So if you need another 30 seconds, you can take it. A couple of other statements that I would make quickly, which is the argument made with respect to the insurable interest I think is inapplicable in this case, in that what is at issue is whether or not there is a property interest. And clearly the case law supports the concept that there can be an insurable interest in the absence of a possessory or property interest. Secondarily, I would point the Court to the restatement of law, which is cited by the appellant. And in fact, the very exception stated by the Court or stated by the appellant for application of the reinstatement refers to the rights of a third party or the actions of a third party to interfere with the rights of the party with the possessory interest. And in this case, LTK does not fall within that exception, because the only interference that it exercised in connection with the property that they claim, the property interest they claim they had, was one that was done pursuant to the authority granted to it by the owner. So I think that an application of the reinstatement as argued, even if it were applied, would not justify a different decision than what the district court agreed to. Thank you, Mr. Minnick. Thanks also for your traveling so far for argument. Thank you, Your Honor. Briefly, if this Court were to certify anything to the Washington Supreme Court, I would submit two questions would be submitted. The first is whether or not the economic loss doctrine applies to the circumstances present in this case, and secondly, if the economic loss doctrine did not apply, then the second question would be did Seattle Monorail Services have a sufficient possessory interest in the Seattle Monorail to sustain a tort action against LTK? When you talk about certifying the circumstances, you're saying we certify the district court findings of that? Yes. Okay. That would be the movement of the record that was presented to the trial court. Okay. Well, when we confer, if the panel has any interest in certification as opposed to just deciding the case, we may issue an order letting each of you say what you want to say about that issue. Okay. I think we've concluded. So I'll thank both parties for an excellent argument. In the case of affiliate FM insurance versus LTK, consulting shall be submitted and the Court shall adjourn with thanks to my colleagues.
judges: Beezer, Gould, Callahan